Okay, our next case is number 231750, Avago Technologies v. Netflix. Okay, Mr. Young. Thank you, Your Honor. May it please the Court, Dan Young with Coles and Brady for Avago Technologies. In this appeal, the Board incorrectly found that claims 1 through 29 of the 938 patent were obvious in view of the Lee and, in some cases, the Lee and Smith references. With respect to the independent claims, which are claims 1, 22, and 27, the Board relied on claim 1 as representative of the three independent claims. As part of the Board's finding, which in this claim relates to User Configuration Information, or UCI, the Board found that Lee disclosed those references in four different ways. The first way was with respect to user preferences, which in the Lee reference, the user, when the user registers, can list what his or her preferences are with respect to the content list or the content title of the movies that he or she... Five issues are appeal. What do you think is your strongest issue? With respect to the independent claims, Your Honor? Sure. Yes, with respect to the independent claims, the strongest issue is that all four of these types of UCI were allowed by the Board through an impermissibly broad construction of the term UCI. They all relate to slightly different limitations of the claims, but they all kind of result with respect to the construction that the Board applies. For example, with user preferences... UCI is User Configuration Information. Yes, Your Honor. Okay. ...of the media content streaming service to a first device. And what the Board found was that the term provision of a service, that's what matters. And the Board said that the... So they took out the term media content streaming, and this is on their final written decision, pages 18 and 19. And they said, thus we determine the controlling provision of a service as recited by the claims can include, but is not limited to, controlling streaming of media content. So, obviously there's lots of ways to update user configuration information. You can update it through a screen, through an input by the user. But in this case, the claims require that you have to update it based on the provision of the service to the first computing device. Now, the specification of the 938 patent does talk about manual inputs, and that's one of the things... Okay, but actually this whole manual input thing is, in a way, beside the point. Because to sustain the Board's ruling with respect to Claim 6, which has the dynamically requirement, we would either have to find that UCI is satisfied by user history or by stop points, right? And the manual updating has nothing to do with that. That's right, Your Honor. Okay, so... So would you like me to handle the user history and stop points? Well, I think those are the key issues if we look at all the claims together. Yes, Your Honor. So with respect to user history, now remember in this case the Board made two specific findings with respect to user history. They said they did not rely on Netflix's expert declaration. Netflix submitted an expert declaration of well over 140 pages with respect to all three of these IPRs. And the Lee reference is a short reference. It's seven pages long. In the citations to the Lee reference, it references the TV Anytime Specification, which is a specification that controls how various inputs are stored and managed by the system. And that TV Anytime Specification is not in the record. So with respect to user history, the reference goes through and says exactly how this recommended content list is created. And it says in the title, it says based on user preferences and device information, with respect to what is stored by the system, the Lee reference also says that it stores user preferences, device character information, and the indication of the exact point of download was interrupted, which is a stop point for user conditions. And then at the conclusion of the, apologies, when it's talking about what is stored by the system, the Lee reference says user preferences are managed by metadata. Metadata is a capital M. And it says it has been constituted according to the XML metadata schema to find the TV Anytime Specification. And then the conclusion also repeats that these recommendations are based on user preferences, device information, and then obviously the stop points. And then the board decided to use user history based on two references in the Lee document. The first, it says that when you log in, the user is presented with a recommended content list created based on usage. Can you direct us to a particular page in the appendix? I've got the Lee reference in front of me. Yes, so the Lee reference that I'm referring to right now is in 1133 section 3.1. And the board anchored its findings on usage history based on this one section. And it says that the recommended content list created based on usage history, which is the information, the content the user has played through streaming, and the details of the profile, which is obvious I won't read them all, but that's the user preferences. And then the board also looked at, when it talks about the history DB or history database, and again this is in appendix page 1132 section 2.5, and it says that database stores and manages content list, and timestamp, and the user's most recent logon to the server and recent streaming. And then again, that storage and that database is controlled by the TB anytime specification. The board made a finding that is critical to the usage history determination. The board made a finding that, and this is on appendix page 43, that the content list was different, the content list stored in the user database, was different than the recommended content list. So the board said that the board read the reference, again without expert testimony from Netflix, and said that what is stored in the user database, this content list, is somehow different than the recommended content list. And what the board's finding is that the Lee reference stores this history of every single thing that the user watched in the system, and then somehow used that information to generate the recommended content list. And our position is that that finding is just not supported by the Lee reference, particularly...  Well, because if you look at what... In order for something to be used to generate the content list, it has to be stored. You have to have a storage somewhere, and Lee specifically tells you what is stored. And if you look at section 2.2.3 and also figure 5, which is an example, and it shows the steps you go through, it tells you what is stored. And it's user information, that's password, user ID password, user preferences, that's what the user fills out at the beginning of the... when he or she registers with the system. And then client device information, and then that is exchanged between the client device and the server in steps 1 and 2. So your contention is that the prior art reference only discloses user preferences in advance and not user history usage? If I understand your question right, yes, your honor. The usage history is not stored and maintained and used to create the recommended content list. The reference is very clear as to what it does use... But the board made a fact finding to the contrary. That's right, your honor. Yes, and that's what we're disputing. Particularly when the board made that finding without relying on expert testimony and without relying on the... requiring the TV anytime... Your argument is based on a lack of substantial evidence, right? Yes, your honor. I mean, it's not your view that the board has to rely on expert testimony, right? No, the board does not have to rely on expert testimony. But this is a case where the Lee reference tries to talk about what is stored in these databases, references a third reference, the TV anytime testification, which is not part of the record, and decided just based on one clause in section 3.1, made this finding that, oh yes, we have this list of everything that the user's ever watched, we store it, and we use that to create this recommended content list. And our expert has, in his declaration, says, well, that's actually really hard to do. And there's all kinds of reasons. You may watch something and you may say, well, I didn't really like that. You wouldn't want to use that as part of the algorithm or whatever to recommend it because the user didn't like it. These are very complicated, and this is an early reference. It's seven pages long with almost no disclosure as to how it actually does it, and it cites to a reference that's not part of the record. And the board made these findings without expert testimony. So we believe that that does not rise the level of substantial evidence. And if I can move on then to stop points, and then I would like to talk briefly about dependent claim 18. With respect to stop points, again, the claim language Can I ask you something before I go to the last point you're making? What about the language in 3.1? And maybe you already talked about this, and I apologize if you did, but it says specifically on page A1133, one is presented with a recommended content list created based on usage history, which is the information, the content the user has played through, the streaming service, and the details of the user's profile. That's right. Why isn't that sufficient evidence, substantial evidence, to support a fact-finding? Because, Your Honor, the term usage history is not described, or there's no explanation in the references to how that's actually used. The only history with respect to the user that's shown up Which is the information of the content the user has played through the streaming service. And then when you look at the, and the board found that that information was stored in the user database. And if you look at section 2.5, it describes the user database. And it says... Because it doesn't identify that? You're saying that this sentence, even though it says usage history, is information of the content the user has played through the streaming service, that that sentence is incorrect? I think that sentence is ill-defined. And the reference throughout the reference, in the title, in the abstract, in the conclusion, in the introductory paragraph, it all says what the recommended content list is generated by. And it's user preferences, it's device information, and it's the stop points. It says that throughout. And the user database, the only thing it says is it stores the content list and the most recent logon information. And what the board found was that the term content list is different than the recommended content list. And the content list, if you look at figure 4, it shows the user, I'm sorry, the database manager. And one of the things that it stores is when the user signs into the system, he or she will list the content titles that he or she likes. And that's part of, this is a very rudimentary recommendation. And again, this was done in 2006, I believe. And our expert has testified that if you just have that one sentence and it's standing alone, a person of ordinary skill in the art would not look at that based on the totality of the reading of that reference and say, oh, this is clearly what it's saying. It's storing this list of everything that's ever been used and using that information to somehow create this recommended content list without any other disclosure. And, Yaron, just one last thing, I'm running out of time, with respect to dependent claim 18. Before we discuss independent claim 18, it's important to show what is actually disclosed in the Lee reference. The Lee reference figure 1 shows these external networks and then the home network. And there's actually a dividing line, a horizontal line, between those two networks. And what it's saying is that everything to the left of that horizontal line, those are where you get the content. And the whole purpose behind Lee was, this was when streaming services, the amount, the streaming times were very slow. And what it said was, well, we're going to download this information, we're going to put it on the server, the home server. And then when a user will log in with his or her device 1, watches an hour of it, hits stop, then they don't have to re-download it. They can just continue it on another device. But everything is controlled from that home server. And what dependent claim 18 says is that at least one of the Polarity computing devices configured to control provision of the media content streaming service to the first and second computing devices from a server remote of the system. So what it's saying is that one of these devices will go to a server outside of the system and then use that, control that, to allow streaming. And that's not what's going on in Lee. Lee simply has a, it will go to an external server, it will get the movie, it will put it on its server, but everything is controlled from the home server. So, Your Honor, that's the end of the questions. I'll save whatever time I have left for Bob. All right, we'll give you two minutes. Thank you, Your Honor. Mr. Batts. Good morning, Your Honors. May it please the Court, Harper Batts on behalf of Apelli Netflix. I think it makes sense to start with usage history unless you had any specific questions for me. Go ahead. Okay, so for usage history, I do think we actually did hit some of the relevant portions of Lee, but I do want to go into that in a little more detail. So if we go back to the Lee reference and specifically, I'd like to talk about the different portions that were discussed, including 3.1. And as Judge Stoll pointed out, I really do want to focus on this language because it sounds like Appellant's argument now is that you can have a teaching in a reference, but a single teaching isn't good enough. You need to have more teachings or additional teachings. And I don't think that's proper under this Court's guidance. If you read 3.1, the sentence says explicitly, if one is already a registered user, one is presented with a recommended content list, and then it says what it's created from. Created based on the same languages they have in their claim. Usage history. And then it doesn't leave this, I think there's this kind of question of, well, is it really usage history, or it could be user preference, or what does this mean? It goes on to define usage history immediately after, comma, which is the information of the content the user has played through the streaming service. And then the sentence continues to say the recommended content list is based upon two components. It's based upon this usage history, and then after the and, it goes on to say, and the details of the user profile, which is based on information set by users regarding their preferred content title, actor, so user preferences. I don't think there's any dispute between the parties that the second part of that sentence is user preferences. So Lee clearly indicates in this paragraph that it's teaching using usage history for the recommended content list. And when we go back to the other portions of Lee, including that section 2.5 that Opposing Counsel noted, it does describe the user database and what's stored in Lee and what's in the user database. And specifically it says the user history database on the top right-hand side of that page, appendix page 1132, it states user history database stores and manages content list and the timestamp of the user's most recent login to the server and received streaming. So it has different pieces of information, including what was received for streaming in that database. And they didn't point to figure three, which is on appendix page 1131. And figure three on appendix page 1131 includes the, it shows the streaming system structure. And on the top left-hand side of that figure, it includes the user database and what's stored in the user database. And it includes the user preferences and the usage history. So there are two different sets of content that are being, or preferences and content that are being stored there. The UCI is the user preferences and the usage history. That's consistent with 3.1. So there's definitely substantial evidence here consistent with 3.1. 3.1 alone would decide this, but there's the other portions of the reference are consistent on that. And their second argument that they made on this point was they went into the conclusion, section four of Lee found on 1135. And section four is the conclusion of a paper giving a study saying, hey, this is the system that we have. This is what we're developing. And it says the system proposes the implementation of this streaming system. And it says the proposed system is capable of doing these different things. And then this is the last sentence that they rely on. Further studies on determining the preferred content by automatically figuring out the user's preferences and device character information are necessary. There's two problems with their argument here. First is that sentence is specific to user's preferences and device character. So device information. It doesn't even discuss usage history. So for them to say that that sentence says usage history wasn't possible, the sentence isn't even discussing usage history. The second problem with that sentence is that that sentence still applies today. People are still trying to improve recommendation engines. The fact that recommendation engines existed back in 2007, people are still trying to do further improvements, further work on it. Whether a reference teaches something, whether it can be improved upon, whether there's subsequent developments in the field, doesn't negate the expressed teachings of Lee on this point. That's what I have for usage history. And if there's any questions, I can cover the other topics. I did want to address, I don't know how much I need to go into the case law here because multiple judges on this panel are familiar from their own decisions. But the Belden decision, I think, clearly laid out. And I think counsel agreed that expert testimony is not required for the PTAB. And the Belden decision included explaining how petition on its face, including in the prior art references themselves and the teachings, are sufficient to provide the basis for invalidity decision by the PTAB. And on page 1079 of the Belden decision, it not only noted that, but then it went on to say specifically that the board members, because of their expertise, may more often find it easier to understand and soundly explain the teachings and suggestions of prior art without expert assistance. So we cited to Belden. I think Belden was the foundational case on this presidential case. And then we also cited to the FanDuel case and the Vernetics case, both cases in which the court built upon Belden, cited back to Belden, and said expert testimony isn't necessary. And I can address those briefly at least. So for the FanDuel case on page 1344, there's this argument about there's expert testimony on one side but not the other side. And there's an argument, was the board required to defer to the expert's testimony? And the court was clear here that the board does not have to. It does its own independent fact finding. And again, that's consistent with the Vernetics case. I don't know if you have any questions, but I want to be clear. There's multiple cases, including presidential cases by the federal circuit, saying that expert testimony is not required. And the board, in fact, can make decisions on its own. Then I do want to address stop points, at least briefly, since Your Honor raised it. I know it wasn't addressed, but if there are any questions about that, I can at least briefly go through the stop points, since that is the other theory that does cover and encompass Dependent Claim 6. They had an argument. Their argument was that the provision of the multimedia content streaming service is not based on the stop points, but is instead based on user input. So stop points are simple. You're watching The Matrix, the movie that's the example in Lee. If you pause the stream, it says it stopped at 10 minutes and 37 seconds or whatever that exact time is, and it's stored by the system so that when you press resume again on your stream, you start at the same place as you stopped. The dispute here is that Abago argued that the user that is controlling the system by pressing resume on their button, on their remote or whatever device, to resume the stream, that that is what is controlling the stream, not the system itself and not the stop points. And the board on appendix page 47, the final written decision, noted that that's a false dichotomy and that both the users at input and the stop points were controlling the content stream. And actually, I think it goes further than that when you think about this for a second, because even more so, the stop points are the user configuration information that's actually controlling the provision of the service. The user is merely requesting a resuming of the stream. They don't know necessarily exactly what the stop point is at the exact time. They're just saying, hey, system, I want to keep watching the movie that I paused earlier. And in their reply brief, Abago does not dispute that control can be based on both, but they're saying, well, it's not really based on. And I think the best analogy I have for based on is if I ask Judge Stahl, hey, what's a good restaurant nearby to eat at after this argument, and she gives me a recommendation and I go to that restaurant, I'm going to that restaurant based on her recommendation. But I'm also going because I'm hungry, right? There's an underlying reason I'm going there, but it's still based on the recommendation. So what the service does to effectuate the user's request is the use of the stop points. And I don't think Abago has been able to effectively overcome that issue. And then the second point that they had on this was they argued that the stop points weren't updated. And we specifically at the board found that both the reference teaches, and also it would be obvious to update the stop points, because you might press the pause and resume button multiple times. And we clearly teaches that when you stop and exit out, it saves the stop point so that you can resume the stream. I guess on claim 18, unless there's any other questions, I'm happy to answer questions on that. But I think it's clear that the board found, and I don't believe there's a factual dispute, that the media comes from a server remote from the service, and therefore claim 18 is satisfied. Okay. Anything else? Unless you have any questions. Thank you, Your Honor. Okay. Thank you. Mr. Young, you have a few minutes. Thank you, Your Honor. With respect to user's history, very quickly, the section that we're talking about the most is section 3.1 of the Lee reference. And it talks about the usage history discussion. And at the very end of that same paragraph, that same paragraph that we're discussing, it says, if one is using the service for the first time, the user profile will be saved to create the content list that will be available after one logs on and identification is approved. That situation is saying that you go into the system as the user, you put in your preferences, it creates a content list for you. That's shown in figure 4. It will show the user database. The Netflix Council referenced figure 3 of the Lee reference, where it talks about the databases. That database is controlled by the database manager, and that is shown in figure 4. So what the board said when it made its finding, that the content list and the recommended content list are two different things, that pulls against this express disclosure in Lee, which says that this content list is created based on user preferences, which is exactly what 3.1 just said, which is what I just read. And again, the board made this finding without expert testimony and without the TV Anytime specification, which controls and dictates how this database is managed. And with respect to stop points, the language in the claim states that you control the provision of the media content streaming service to the first computing device based on user configuration information. In the stop point example, nothing is going to happen with respect to the provision of content media streaming from the home server to the device unless the user clicks on the continuous play functionality. So I think I'm out of time, but Your Honor, if you have any questions. Okay. Thank you, Mr. Young. Thank you.